ERVIN, J.
Crawford & Company, a servicing agent on behalf of the employer, H.L. Stansell, Inc., appeals an amended final workers’ compensation order directing it to pay temporary indemnity benefits, medical costs, and penalties, interest, costs and attorney’s fees to appellee/claimant, Prank C. Connors. It contends that the judge of compensation claims (JCC) erred in ruling it was a carrier, and, in such capacity, was responsible for paying the benefits. We could readily agree if the case before us turned on the issue as appellant has phrased it, because, if such were the effect of the order, the error would be one of law and this court would not be required to defer to the JCC’s evidentiary findings. On the contrary, we find nothing in the order holding that Crawford was obligated to provide payment on the basis it was a carrier. In our judgment, the JCC simply decided that the servicing agent failed to establish its affirmative defense that it did not have sufficient funds on deposit from the employer with which to pay the benefits awarded claimant. Because competent, substantial evidence supports such determination, we affirm. A summarization of the facts follows.
On November 5, 2001, the JCC entered a compensation order finding that Connors had sustained a compensable injury and directing the employer/servicing agent (E/ SA) to pay the benefits previously stated. The E/SA had made no appearance at the hearing, but after entry of the order, the attorney who had formerly represented the E/SA filed a notice of appearance on behalf of Crawford & Company only, in its capacity as servicing agent, and moved for rehearing/clarification or vacation of the order. Crawford then asserted for the first time that it had served only as a third-party administrator for the employer and that it had never contracted as a carrier to indemnify or be responsible for judgments or liabilities entered against the employer. The record before the JCC, including the evidence presented at the hearing on the servicing agent’s motions, disclosed the following pertinent facts.
During the pendency of the claim, the State of Florida ordered the employer’s trust fund account to be terminated, because it was not properly self-insured, and Crawford notified its employees on April 28, 1999, that it was terminating the Stan-sell program effective as of September 18, 1998. Notwithstanding its knowledge of this action, Crawford proceeded to a hearing on June 1, 1999, at which it raised various defenses to the merits of Connors’ claim, but not the termination of coverage. In fact, the parties’ stipulations included the date of the injury, June 27, 1997, and an admission that workers’ compensation coverage was in effect, that temporary benefits had been paid in a certain amount, and that the E/SA would pay medical bills *1062 claimant incurred before the E/SA had filed a notice of denial of the claim.
After the presentation of some of the evidence, the hearing was continued. Before completion of the ease, the employer filed for Chapter 11 bankruptcy, and a stay was entered regarding all pending actions against it. On October 31, 1999, Crawford informed Stansell that it could no longer assist or represent it in the claim involving Connors because of the bankruptcy, and it sent the JCC a copy of the letter. It did not, however, seek to withdraw as a party to the proceeding.
The stay ordered by the United States Bankruptcy Court was lifted on August 1, 2001. Thereafter the JCC entered an order in September 2001, setting the case for final hearing on October 15, and notice of same was sent to both Stansell and Crawford & Company.[1] Connors appeared with counsel at that hearing, but no one appeared on behalf of either Stansell or Crawford. In its motion for rehearing directed to the order awarding benefits, Crawford requested that the order making the employer and Crawford jointly liable for the payment of benefits be amended to provide that Stansell only be responsible for same.
An evidentiary hearing was held on the motion where Peggy Ellis, the insurance adjustor supervisor, testified that Stansell was self-insured and that it had contracted with Crawford & Company, which is not an insurance company, to provide third-party administrative services on its workers’ compensation cases. She continued that Stansell, like all employers making similar contracts with Crawford, would have provided money to be held by Crawford in a trust fund for administration. Thereafter, in October 1999, following the entry of the bankruptcy stay order, Crawford closed all of its files and returned them to Stansell. Any remaining trust funds would also have been returned to Stansell at that time. Ellis, however, was unable to produce a canceled check representing its closure of Stansell’s account, nor could she answer questions regarding why Crawford had not informed the JCC that it was no longer involved in the defense of the claim after it had received the notices from the JCC of the hearings set.
Because Ellis did not have possession of the contract between Stansell and Crawford & Company regarding the terms of the parties’ agreement, Crawford was permitted to submit additional documentary evidence regarding its terms. The agreement later offered was unsigned by either party, and it covered a period from March 1, 1998, through September 18, 1998, a time span following the date of the claimant’s industrial accident of June 27, 1997. Additionally, an interoffice memorandum dated April 28, 1999, informed all branch locations of Crawford that its agreement with Stansell had been terminated as of September 18, 1998, for the reason that Stansell was not self-insured in the State of Florida, and that the State had entered an order to terminate the account. On the same document, however, appeared the notation that Crawford & Company would handle the “current program to conclusion,” but that any claims resulting from accidents occurring on or after September 18, 1998, should be returned to Stansell.
In addition to reciting the above facts, the JCC observed that the evidence showed Crawford did not have a trust fund account with Stansell; rather, it administered a paycard system using either Stan-sell’s or Crawford’s checking account. Moreover, the paycard program dates *1063 were from March 1,1996, through September 17, 1998, which included the date of the industrial accident. Based on the above record, the JCC found that the servicing agent did not satisfy its affirmative defense that no coverage existed for claims brought against the employer resulting from dates of accidents occurring before the date of the termination of the agreement, or before September 18, 1998. Compare Aetna Cas. & Sur. Co. v. Houghton, 632 So.2d 103 (Fla. 1st DCA 1994). As a result, she denied the motions and entered the amended compensation order.
Because we conclude competent, substantial evidence supports such determination, the order is
AFFIRMED.
BARFIELD, J., concurs; WOLF, J., dissents with written opinion.

. Similar notices had previously been sent to both the employer and Crawford, but because of the stay order, the case was continued for resolution until the stay was vacated.